**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SALVATORE J. CULOSI, personally
and as personal representative and
administrator of the estate of Dr.
Salvatore J. Culosi, deceased;
ANITA L. CULOSI, personally and as
personal representative and
administrator of the estate of Dr.
Salvatore J. Culosi,

           *Plaintiffs-Appellees,*

           v.

DEVAL BULLOCK, Officer,
individually and in his official
capacity as Fairfax County Police
Officer,

           *Defendant-Appellant,*

           and

FAIRFAX COUNTY, VIRGINIA; DAVID
M. ROHRER, Colonel, in his official
capacity as Chief of Police; JAMES
KELLAM, individually and in his
official capacity; UNITED STATES OF
AMERICA,

           *Defendants.*

No. 09-1042

SALVATORE J. CULOSI, personally
and as personal representative and
administrator of the estate of Dr.
Salvatore J. Culosi, deceased;
ANITA L. CULOSI, personally and as
personal representative and
administrator of the estate of Dr.
Salvatore J. Culosi,

*Plaintiffs-Appellants,*

v.

FAIRFAX COUNTY, VIRGINIA; JAMES
KELLAM, individually and in his
official capacity; DAVID M.
ROHRER, Colonel, in his official
capacity as Chief of Police,

*Defendants-Appellees,*

and

UNITED STATES OF AMERICA; DEVAL
BULLOCK, Officer, individually and
in his official capacity as Fairfax
County Police Officer,

*Defendants.*

No. 09-1104

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(1:07-cv-00266-LMB-TCB)

Argued: October 28, 2009

Decided: February 22, 2010

Before KING, SHEDD, and DAVIS, Circuit Judges.

Dismissed by published opinion. Judge Davis wrote the opinion, in which Judge King and Judge Shedd concurred.

## COUNSEL

**ARGUED**: David John Fudala, SUROVELL, MARKLE, ISAACS & LEVY, Fairfax, Virginia, for Deval Bullock, Officer, individually and in his official capacity as Fairfax County Police Officer. Michael S. Lieberman, DIMUROGINSBERG, PC, Alexandria, Virginia, for Salvatore J. Culosi, personally and as personal representative and administrator of the estate of Dr. Salvatore J. Culosi, deceased, and Anita L. Culosi, personally and as personal representative and administrator of the estate of Dr. Salvatore J. Culosi. Ann Gouldin Killalea, COUNTY ATTORNEY'S OFFICE, Fairfax, Virginia, for Fairfax County, Virginia, James Kellam, individually and in his official capacity, and David M. Rohrer, Colonel, in his official capacity as Chief of Police. **ON BRIEF:** Bernard J. DiMuro, DIMUROGINSBERG, PC, Alexandria, Virginia, for Salvatore J. Culosi, personally and as personal representative and administrator of the estate of Dr. Salvatore J. Culosi, deceased, and Anita L. Culosi, personally and as personal representative and administrator of the estate of Dr. Salvatore J. Culosi. David P. Bobzien, County Attorney, COUNTY ATTORNEY'S OFFICE, Fairfax, Virginia, for Fairfax County, Virginia, James Kellam, individually and in his official capacity, and David M. Rohrer, Colonel, in his official capacity as Chief of Police.

## OPINION

DAVIS, Circuit Judge:

The underlying claims at issue in these appeals, asserted pursuant to 42 U.S.C. § 1983 and state law, arise out of the

fatal shooting of an arrestee by a Fairfax County, Virginia, police officer. Defendant Deval Bullock, the officer who fired the fatal shot, noted an interlocutory appeal in No. 09-1042 from the district court's denial of summary judgment on the ground of qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Thereafter, pursuant to an order entered under Fed. R. Civ. P. 54(b), Plaintiffs Salvatore J. and Anita L. Culosi, individually and as personal representatives of the estate of the decedent, filed a cross-appeal in No. 09-1104 from the district court's earlier order granting a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief could be granted filed by Defendants Fairfax County, Police Chief David M. Rohrer, and Lt. James Kellam. For the reasons that follow, we conclude that the order of the district court denying qualified immunity to Officer Bullock is not immediately appealable because the district court merely determined that genuine disputes of material fact existed—a determination not subject to interlocutory appeal. *See Johnson v. Jones*, 515 U.S. 304, 319-20 (1995). Moreover, under the circumstances, we decline to exercise jurisdiction over the Plaintiffs' cross-appeal pursuant to the Rule 54(b) certification order entered by the district court. Accordingly, we shall dismiss both appeals in their entirety.

I.

In October 2005, the Fairfax County Police Department ("FCPD") began an investigation of Dr. Salvatore J. Culosi, Jr. ("Dr. Culosi"), a local optometrist, for felony gambling offenses. Detective David Baucom ("Det. Baucom") of the FCPD Money Laundering Unit ("the MLU"), acting in an undercover capacity, had begun to place sports bets with Dr. Culosi at a sports bar, betting approximately $28,000 over the course of several months. In January 2006, Det. Baucom and other members of the MLU decided to arrest Dr. Culosi and to execute a search warrant at Dr. Culosi's residence for evidence of his illegal gambling activities.

The FCPD Tactical Section ("the SWAT team") customarily executed search warrants for the MLU but it was not ordinarily involved in effecting routine warrantless felony arrests, as was planned of Dr. Culosi. In any event, Det. Baucom contacted the SWAT team supervisor, Defendant Lieutenant James Kellam ("Lt. Kellam"), and requested assistance in the execution of the search warrant for Dr. Culosi's home. In the month before the scheduled raid, Lt. Kellam's SWAT team conducted surveillance of Dr. Culosi's residence and neighborhood. Lt. Kellam determined from the surveillance that there were no indications of "red flags" signifying any special dangers in the proposed operation. In due course, the officers decided to execute the search warrant at Dr. Culosi's home on the evening of January 24, 2006. Under the plan the officers put in place, Det. Baucom would lure Dr. Culosi from his residence to collect $1,500 that Dr. Culosi owed Det. Baucom from bets on football games, and the SWAT team would assist in effecting Dr. Culosi's arrest and conduct the search of the residence.

On the morning of January 24, 2006, members of the SWAT team, including Officer Bullock, were involved in supervising an early morning deer hunt, beginning at 5:00 a.m. and ending later that afternoon. Most of the members then went home and gathered later in the evening to review the procedures for the arrest of Dr. Culosi and the search of his residence. Lt. Kellam assigned Sergeant Sean Scott ("Sgt. Scott") to supervise the arrest aspect.

Sgt. Scott decided to use a dynamic tactical method known as a "vehicle takedown" for Dr. Culosi's arrest. Critical to this method is the sudden appearance of officers, at least one of whom would point his firearm directly at the arrestee in order to control him. Other officers would then go "hands on," i.e., take physical custody of the arrestee and place him in handcuffs. Specifically, the plan here called for Det. Baucom, while wired for audio monitoring by members of the SWAT team, to drive to Dr. Culosi's residence, wait in his vehicle for

Dr. Culosi to leave his house and approach the vehicle, and then give a verbal arrest signal once Dr. Culosi handed over the $1,500 gambling payoff. When the arrest signal was given, Sgt. Scott, accompanied by Officer Bullock, would drive a van from around the corner. Officer Bullock would then exit from the van's front passenger side, announce "police, don't move" from a gun ready position, and take Dr. Culosi into custody.

Sgt. Scott later modified the plan whereby Officer Bullock would merely "control" Dr. Culosi (by use of his firearm) while officers from a second vehicle would approach to go "hands on" with Dr. Culosi. Before the plan was executed, during or after the pre-arrest briefing, Sgt. Scott received a phone call requiring him to withdraw. Lt. Kellam assumed Sgt. Scott's role in executing Dr. Culosi's arrest. Officer Lee Northrop was substituted as the driver of Officer Bullock's vehicle.

At approximately 9:00 p.m., Det. Baucom called Dr. Culosi and arranged to meet outside of Dr. Culosi's residence, a townhouse condominium. Half an hour later, Dr. Culosi left his house in stockinged feet and met Det. Baucom, who was sitting in his car outside the garage. Dr. Culosi approached the car on the passenger side through his garage and began a conversation about the upcoming Superbowl, while handing Det. Baucom $1,500. The parties dispute whether Dr. Culosi was holding a cell phone in his hand during the encounter, although his cell phone was recovered close to his body after the shooting. Det. Baucom soon gave the verbal arrest signal.

At the signal, Officer Northrop rapidly approached Det. Baucom's vehicle and pulled up immediately behind it. At that time, Dr. Culosi was still standing next to the passenger-side door of Det. Baucom's vehicle. When Officer Northrop's vehicle came to rest, Officer Bullock exited from the front passenger door using his left hand to open the door while simultaneously unholstering his weapon with his right hand

and announcing "police." Officer Bullock intended to assume a two-handed-grip, i.e., a "gun ready" position. As he executed this maneuver, his weapon discharged a single round, striking Dr. Culosi in the heart. Dr. Culosi received emergency treatment at the scene but died of his wound at the hospital shortly after the incident.

Officer Bullock has insisted consistently that the discharge of his weapon was "accidental," although he has varied somewhat his explanations as to the precise character and happening of the "accident." In any event, it is undisputed that the firearm discharged as a direct result of Officer Bullock squeezing the trigger of his .45 caliber semi-automatic pistol; the weapon did not fire as a result of a malfunction.

## II.

Plaintiffs filed this action on March 20, 2007. By their amended complaint, they sought damages in eight counts as follows: Count 1, 42 U.S.C. § 1983 claim against Fairfax County and Chief Rohrer, based on an alleged custom or policy regarding the use of excessive force;[1] Count 2, 42 U.S.C. § 1983 Fourth Amendment excessive force claim against Officer Bullock; Count 3, 42 U.S.C. § 1983 Fourth Amendment excessive force claim against Lt. Kellam; Count 4, 42 U.S.C. § 1983 due process claim, i.e., denial of access to courts, against Fairfax County and Chief Rohrer;[2] Count 5,

---

[1]The Plaintiffs generally theorized that Fairfax County and Police Chief Rohrer are liable under § 1983 for maintaining a custom or policy of excessive force. They further alleged that Rohrer and the County are responsible for the FCPD's use of the SWAT team for executing search warrants, employing advanced tactical methods, and for the practice of drawing weapons and pointing them at individuals. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).

[2] Apparently, the access-to-courts claim theorized that the police department purposefully conducted its investigation of the shooting in such a manner as to deny to the Plaintiffs accurate, probative evidence of how Dr. Culosi was killed.

state law claim against Bullock (assault); Count 6, state law claim against Bullock (battery); Count 7, state law claim against Bullock (gross negligence); and Count 8, state law claim against Lt. Kellam (gross negligence).

By order entered on October 19, 2007, as modified by an order entered on August 14, 2008, the district court dismissed *with prejudice* counts 1, 3, and 8, of the amended complaint, and *without prejudice* count 4, and thereby dismissed all claims against all defendants except Officer Bullock, who fired the fatal shot. After the completion of discovery, Officer Bullock moved for summary judgment, invoking qualified immunity as to the § 1983 excessive force claim, and contending that he was entitled to judgment as a matter of law on the remaining state law claims. After holding a hearing, the district court entered an order on December 5, 2008, reciting that "for the reasons stated in open court," Officer Bullock's motion for summary judgment was denied.

Thereafter, the Plaintiffs moved the district court to certify the earlier dismissal of the claims against defendants other than Officer Bullock as a final appealable judgment pursuant to Fed. R. Civ. P. 54(b). Defendants did not oppose that motion and the court entered a certification order on January 2, 2009. Officer Bullock and the Plaintiffs filed timely notices of appeal on January 5, 2009, and January 16, 2009, respectively.

### III.

We examine first the interlocutory appeal brought by Officer Bullock. On appeal, the parties agree (and the district court clearly recognized) that the viability of the Plaintiffs' Fourth Amendment excessive force claim generally, and application of the qualified immunity defense to Officer Bullock, specifically, turns on this question: was the shooting death of Dr. Culosi the result, on the one hand, of an intentional act by Officer Bullock, or, on the other hand, was it the

result of a tragic and deeply regrettable, unintentional, accidental, discharge of Officer Bullock's firearm?

Of course, this framing of the issue is quite correct. A Fourth Amendment seizure occurs "only when there is a governmental termination of freedom of movement *through means intentionally applied*." *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989)(emphasis in original). The Supreme Court has held that shooting a fleeing suspect is a Fourth Amendment seizure. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). A claim of excessive force is analyzed under the Fourth Amendment standard of objective reasonableness. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Scott v. Harris*, 550 U.S. 372, 381 (2007). A police officer may use deadly force "when the officer has sound reason to believe that a suspect poses a threat of serious physical harm to the officer or others." *Elliot v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996). Reasonableness is determined by the information possessed by the officer at the moment the force is employed. *Waterman v. Batton*, 393 F.3d 471, 477 (4th Cir. 2005). A mistaken use of deadly force, however, is not necessarily a constitutional violation under the Fourth Amendment: "a mistaken understanding of facts that is reasonable in the circumstances can render a seizure reasonable under the Fourth Amendment." *Milstead v. Kibler*, 243 F.3d 157, 165 (4th Cir. 2001); *see also Maryland v. Garrison*, 480 U.S. 79, 87 (1987) ("[T]he Court has recognized the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants."); *Henry v. Purnell*, 501 F.3d 374, 382 (4th Cir. 2007) (recognizing that shooting the decedent with a handgun when thinking it was a taser gun could be a reasonable mistake).

Before us, Officer Bullock vigorously contends that the district court erred in denying his motion for summary judgment because, as a matter of law, the death of Dr. Culosi was *accidental*, and therefore, the circumstances surrounding his death cannot support a Fourth Amendment excessive force claim at

all. Furthermore, he contends, that conclusion entitles him to qualified immunity.[3]

Whether we agree or disagree with the district court's assessment of the record evidence on that issue, however, is of no moment in the context of this interlocutory appeal. This conclusion is required because the Supreme Court and this court have made clear "that a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson*, 515 U.S. at 319-20. "In other words, we possess no jurisdiction over a claim that a plaintiff has not presented enough evidence to prove that the plaintiff's version of the facts actually occurred, but we have jurisdiction over a claim that there was no violation of clearly established law accepting the facts as the district court viewed them." *Winfield v. Bass*, 106 F.3d 525, 530 (4th Cir. 1997) (en banc).

In denying Officer Bullock's motion for summary judgment, the district court plainly, even if only implicitly, acted on the basis that there existed in this case genuine disputes of material fact and that the resolution of such disputes at trial was necessary before the legal issue of Officer Bullock's entitlement to qualified immunity could be determined. Although the court did not memorialize its ruling in a memorandum opinion, its comments "in open court" leave little doubt as to

---

[3]The inquiry into qualified immunity starts with a threshold question: taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? *Saucier v. Katz*, 544 U.S. 194, 201 (2001). If the court finds there is no violation of a constitutional right, the inquiry ends there and the officer is entitled to summary judgment. If a potential violation is shown, the next step is to ask whether the right was clearly established. *Id*. Qualified immunity is abrogated only when the right that the officer is alleged to have violated was a "clearly established" right at the time of the violation. *Id*. at 202. The Supreme Court has recently freed us to consider these issues in any sequence. *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).

its reasoning: "It's a very close case . . . Credibility of the witnesses is clearly an issue that runs through this, and quite frankly, this case will to a significant degree rely upon the credibility of Officer Bullock." J.A. 195.[4] Thus, it is clear that the district court found that whether the death of Dr. Culosi was the result of intentional force willfully applied by Officer Bullock, or an accident, was a factual issue for the jury at trial.[5]

---

[4]The record shows that Officer Bullock gave numerous formal accounts of the incident, including: (1) a statement on the night of the shooting, (2) a statement within days thereafter, (3) statements during internal affairs interviews and disciplinary proceedings conducted by the police department, as well as (4) by deposition in this case. Understandably, perhaps, not all of his accounts are entirely consistent with each other, nor entirely consistent with accounts given by several witnesses who were present at the time of the shooting.

[5]To be sure, the district court expressed deep skepticism as to whether any one or more of the Plaintiffs' myriad "theories" would be found persuasive by a jury. J.A. 185-86 ("I don't see how this case can go forward on this record."). Seemingly, the two theories most pressed on appeal by the Plaintiffs are that Bullock acted intentionally "because he overreacted to observing a cell phone in Culosi's hand, or . . . due to fatigue and anxiety [in consequence of his participation in the early-morning deer hunt], Bullock unreasonably reacted to some subjective belief that Culosi was about to run into his house." *See* Reply Br. at 4.

In any event, as the district court ultimately (if only impliedly) concluded, the Plaintiffs have generated genuine disputes of material, historical fact in reliance on: (1) eyewitness accounts from officers who were present at the time of and immediately after the shooting who arguably contradict Officer Bullock on some points; (2) expert opinion evidence, including reenactment evidence, which Officer Bullock never sought to have formally excluded from consideration by the district court; (3) forensic evidence gathered from and derived from the scene of the shooting (including the presence of the Dr. Culosi's cell phone); and (4) a series of internal inconsistencies in Officer Bullock's own accounts, of which there are more than four, as to how the shooting occurred. Whether or not we would agree with the district court's evaluation of the record evidence relied on by the Plaintiffs, we have no hesitation in concluding that this array of evidence is what undergirds the district court's implied conclusion that there existed genuine disputes of material fact that bear on and support the Plaintiffs' alternative explanations of whether the shooting was accidental or intentional. And, as the district court stated, "this case will to a significant degree rely upon the credibility of Officer Bullock." J.A. 195.

In his appellate briefs Officer Bullock does not cite or discuss *Johnson* or *Winfield* or their progeny, *see*, *e.g.*, *Iko v. Shreve*, 535 F.3d 225 (4th Cir. 2008); nevertheless, he earnestly disclaims reliance on any alleged insufficiency of the Plaintiffs' evidentiary showing that the discharge of his weapon was other than accidental. *See* Reply Br. at 3. We find, however, his argument that the shooting was accidental *as a matter of law* is precisely that: an argument based on insufficient record evidence to prove the contrary, and thus one not open to consideration to us on interlocutory appeal. *Id*.

As mentioned above, Officer Bullock agrees, in effect, that if a fact finder found by a preponderance of the evidence that he intentionally and willfully shot Dr. Culosi, a constitutional violation would be established. *See Garner*, 471 U.S. at 8. Thus, unless the district court was satisfied that a genuine dispute of material fact on that issue was presented, it would have granted Officer Bullock's motion for summary judgment. In other words, it is only because the district court, drawing inferences in favor of the Plaintiffs, discerned that Plaintiffs had accumulated sufficient proof of an intentional shooting, i.e., "the illegality of the seizure," *see Figg v. Schroeder*, 312 F.3d 625, 642 (4th Cir. 2002), that the court denied his motion.[6] Accordingly, we lack jurisdiction to consider Officer Bullock's interlocutory appeal. *See Iko*, 535 F.3d at 237 ("Because the district court denied, by virtue of conflicting factual inferences, summary judgment on the claim that the application of pressure to Iko constituted excessive force, there is no legal issue on appeal on which we could

---

[6]This is not a case in which the legal effect of a collection of undisputed facts points to divergent outcomes, one constitutional and the other not. Rather, this is a case, as the district court recognized, in which *the version of facts ultimately accepted by the fact finder will dictate the outcome of the constitutional inquiry*. Of course, our conclusion, compelled by *Johnson*, that we lack jurisdiction to review the sufficiency of the evidence in this interlocutory appeal will have no bearing on any post-trial review of the sufficiency of the evidence should the need to do so arise.

base jurisdiction. Therefore, this aspect of the officers' appeal must be dismissed.").[7]

## IV.

We now turn to the cross-appeal. The Plaintiffs' cross-appeal from the district court's dismissal of all claims against all defendants other than Officer Bullock was authorized by the district court, at their request, pursuant to Fed. R. Civ. P. 54(b). Under that rule, a district court "may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Fed. R. Civ. P. 54(b).

We have recognized that "[w]e can only reverse a district court's Rule 54(b) certification if we determine that the district court has abused its discretion." *Fox v. Baltimore Police Dep't*, 201 F.3d 526, 531 (4th Cir. 2000). Although we normally "defer to the district court's initial determination that a judgment is final and no just reason exists for delay[,] [w]e must necessarily accord the district court less deference . . . when . . . the court offers no rationale for its decision to certify." *Id.* (citing *Braswell Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1336 (4th Cir. 1993)(recognizing that "numerous courts have held that where the district court's Rule 54(b) certification is devoid of findings or reasoning in support thereof, the deference normally accorded such a certification is nullified")). Here, the district court failed to specify any reasons for certifying the appeal as requested by the Plaintiffs, and we can discern scant reason for us to accept jurisdiction. Most likely, however, the court acted on the possibility that we might reverse the denial of qualified immunity to Officer Bul-

---

[7]Our dismissal of Plaintiffs' cross-appeal, *see infra* Part IV, makes it unnecessary for us to address Officer Bullock's contention that we should exercise pendent appellate jurisdiction over the district court's denial of his motion for summary judgment as to the state law claims.

lock, and that certification under Rule 54(b) might then make good sense, insofar as the Plaintiffs would be free to seek plenary review of all claims in the case upon one appeal. Such reasoning, however, would constitute an abuse of discretion because it rests on a misapprehension of the law — the mistaken notion that we would possess jurisdiction over Officer Bullock's interlocutory appeal. Our dismissal of Officer Bullock's interlocutory appeal plainly undercuts this basis for the Rule 54(b) certification.

Moreover, as to the Defendants other than Officer Bullock, who are the Appellees in the cross-appeal, the orders of the district court left open the possibility that the Plaintiffs might reinstate their denial-of-access-to-the-courts claim, count 4 of the amended complaint. Thus, although the district court's orders nominally dismissed count 4 of the amended complaint, because the dismissal was without prejudice, the Plaintiffs have the unfettered right to refile their § 1983 due process claim. Describing that claim as "premature," it appears that the district court has never definitively considered the legal sufficiency of the claim at all. It would be anomalous, to say the least, for us to review such a dismissal pursuant to Fed. R. Civ. P. 54(b).[8]

V.

For the foregoing reasons, the appeals in this case are

*DISMISSED*.

---

[8]Indeed, the Plaintiffs-Cross Appellants make no argument as to the access-to-courts claim in their opening brief on appeal. This is unsurprising inasmuch as they persuaded the district court to modify the dismissal of that claim to a dismissal without prejudice.