**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————————

**No. 15-1795**

————————————

JEROME C. NEWKIRK, SR.,

       Plaintiff - Appellee,

    v.

JAMES B. ENZOR, individually and as an officer of the South Carolina Highway Patrol,

       Defendant – Appellant,

    and

SOUTH CAROLINA DEPARTMENT OF PUBLIC SAFETY,

       Defendant.

————————————

**No. 15-1797**

————————————

CATHERINE B. NEWKIRK,

       Plaintiff - Appellee,

    v.

JAMES B. ENZOR, individually and as an officer of the South Carolina Highway Patrol,

       Defendant – Appellant,

    and

SOUTH CAROLINA DEPARTMENT OF PUBLIC SAFETY,

       Defendant.

Appeals from the United States District Court for the District of South Carolina, at Florence. Richard M. Gergel, District Judge. (4:13-cv-01634-RMG; 4:13-cv-01635-RMG)

Argued: September 20, 2016                    Decided: January 5, 2017

Before NIEMEYER and DIAZ, Circuit Judges, and Irene M. KEELEY, United States District Judge for the Northern District of West Virginia, sitting by designation.

Dismissed by unpublished opinion. Judge Diaz wrote the opinion, in which Judge Niemeyer and Judge Keeley joined.

**ARGUED**: Samuel F. Arthur, III, AIKEN BRIDGES ELLIOTT TYLER & SALEEBY, P.A., Florence, South Carolina, for Appellant. Christopher P. Kenney, RICHARD A. HARPOOTLIAN, P.A., Columbia, South Carolina, for Appellees. **ON BRIEF**: Richard A. Harpootlian, RICHARD A. HARPOOTLIAN, P.A., Columbia, South Carolina; Joseph M. McCulloch, Jr., LAW OFFICES OF JOSEPH M. MCCULLOCH, JR., Columbia, South Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

The underlying claims in these consolidated appeals arise from James Enzor's 2012 traffic stop of Catherine and Jerome Newkirk. Enzor, a former South Carolina Highway Patrol officer, appeals the district court's denial of his motions for summary judgment on the ground of qualified immunity. The district court denied Enzor qualified immunity because genuine disputes of material fact existed that precluded entry of summary judgment. Because those determinations may not be addressed in an interlocutory appeal, we dismiss the appeals for lack of jurisdiction.

I.

Our recitation of the facts is guided in part by our review of the video from the dash-mounted camera in Enzor's patrol car and audio from Enzor's body microphone. See Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008) (citing Scott v. Harris, 550 U.S. 372, 380 (2007)) ("[W]here, as here, the record contains an unchallenged videotape capturing the events in question, we must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape.").

A.

On October 14, 2012, Enzor, on duty with the South Carolina Highway Patrol, stopped the Newkirks on Interstate 95 in

3

Florence County, South Carolina. Enzor told Mrs. Newkirk (the driver) that she had been traveling at 77 miles per hour in a 55 mile per hour construction work zone. After reviewing Mrs. Newkirk's registration and proof of insurance, Enzor determined that he would "cut [the speed] back to 64 in a 55" in the traffic citation. Mrs. Newkirk, however, insisted that she had not been speeding, stating, "I think there is a bit of discrimination going on here." Enzor then ordered Mrs. Newkirk to get out of the car. Mrs. Newkirk complied, stepping to the rear of the car with Enzor.

In view of the dash cam, Enzor and Mrs. Newkirk engaged in a largely inaudible discussion, during which Enzor pointed at Mrs. Newkirk and said, "Let me tell you something right now," and Mrs. Newkirk responded, "No." Enzor then told Mrs. Newkirk that she was under arrest. He took Mrs. Newkirk's wrist and attempted to pull her arms toward him, but Mrs. Newkirk kept her arms at her sides. Enzor then stepped behind Mrs. Newkirk and pressed her against the car, twisting her hands and wrists to pull her hands behind her back. Enzor instructed Mrs. Newkirk to "quit resisting arrest." Mrs. Newkirk responded, "I'm not resisting arrest." Enzor then called for backup.

At that point, the pair stepped out of the frame of the dash cam toward the passenger's side of Enzor's patrol car. Enzor repeatedly yelled at Mrs. Newkirk, "Get in the car! Get in

4

the car!" Mrs. Newkirk, in turn, called out to her husband and protested to Enzor "You're hurting me!"

As Enzor attempted to arrest Mrs. Newkirk, Mr. Newkirk got out of the car and walked over to Enzor with his hand slightly raised, speaking inaudibly. Mr. Newkirk contends that he was simply inquiring about the situation and telling Enzor that Enzor's actions were not necessary. Still struggling to handcuff Mrs. Newkirk, Enzor pointed at Mr. Newkirk, and instructed him to "Get in the car, sir, get in the car!" Mr. Newkirk walked back to the car, but stood outside watching Enzor and Mrs. Newkirk. He did not get back into the car until Enzor repeated his order. Once inside, Mr. Newkirk left the door slightly ajar, and kept his head turned toward Enzor and Mrs. Newkirk.

After Enzor and Mrs. Newkirk stepped out of view of the dash cam, the video depicts Mr. Newkirk leaning his head out of the passenger's side door, yelling at Enzor. Although largely inaudible, Mr. Newkirk can be heard shouting "Ain't no reason for that!" and "We'll sue them!" and "Shut up!" At that point, Enzor told Mr. Newkirk that he too was under arrest. With Mrs. Newkirk handcuffed and in the custody of an officer who responded to Enzor's request for backup, Enzor arrested Mr. Newkirk.

The following day, a state magistrate judge issued an arrest warrant for Mr. Newkirk for the offense of hindering an officer. In the sworn affidavit accompanying the warrant, Enzor stated that "[w]hile conducting a routine traffic stop[,] one Jerome Newkirk did verbally and repeatedly instruct and coerce the driver of the vehicle to disregard any instructions [Enzor] was giving her." J.J.A. 73.[1]

B.

The Newkirks brought separate actions in state court against Enzor and the South Carolina Department of Safety. As relevant to these appeals, Mr. Newkirk brought a 42 U.S.C. § 1983 false arrest suit alleging that Enzor violated his Fourth, Fifth, and Fourteenth Amendment rights. Mrs. Newkirk brought a § 1983 false arrest and excessive force suit, alleging that Enzor violated her Fourth, Fifth, and Fourteenth Amendment rights. The defendants removed the suits to the United States District Court for the District of South Carolina, and Enzor subsequently moved for summary judgment in both cases on the merits and on the basis of qualified immunity.

The district court referred the cases to a magistrate judge. In Mr. Newkirk's case, the magistrate judge considered

---

[1] Citations to "J.J.A." and "C.J.A." refer, respectively, to the Joint Appendix filed by the parties in Jerome Newkirk's case and Catherine Newkirk's case.

whether Enzor had probable cause to arrest Mr. Newkirk for the South Carolina common-law offenses of hindering an officer or obstruction of justice.[2] The magistrate judge found that South Carolina courts have held that words alone can constitute the offense of hindering an officer and that because Mr. Newkirk's "exact words are not entirely clear when viewing the video," a genuine issue of material fact existed as to whether Mr. Newkirk, in failing to immediately obey Enzor's instructions and shouting from the car yards away from Enzor and Mrs. Newkirk, had hindered Enzor's arrest of Mrs. Newkirk. J.J.A. 340.

Turning to whether Enzor was entitled to qualified immunity, the magistrate judge identified two constitutional rights that were clearly established at the time of Enzor's alleged misconduct: (1) a Fourth Amendment right to be free from an arrest without probable cause, and (2) a First Amendment right of a third party to be free from arrest for criticizing the arrest of another, absent the use of fighting words. The

---

[2] Throughout this litigation, Enzor has relied on three statutes as justification for Mr. Newkirk's arrest: (1) S.C. Code Ann. § 16-5-50 (criminalizing rescuing prisoners or hindering officers serving a warrant); (2) S.C. Code Ann. § 17-25-30 (outlining proper sentence where punishment for legal conviction is not provided by statute); and (3) S.C. Code Ann. § 16-9-320 (criminalizing the knowing and willful assault, opposition, or resistance of a law enforcement officer engaged in serving legal process). The district court adopted the magistrate judge's finding that none of these offenses could apply to Mr. Newkirk's conduct.

7

magistrate judge recommended denying Enzor qualified immunity because a question of fact existed as to whether Enzor violated Mr. Newkirk's clearly established rights, precluding the court at the summary judgment stage from determining whether Enzor's arrest of Mr. Newkirk was objectively reasonable.

The district court adopted the magistrate judge's recommendation as to probable cause and qualified immunity, and denied Enzor's motion for summary judgment. The court rejected Enzor's argument that the "circumstances of the particular case" entitled him to qualified immunity, agreeing with the magistrate judge that the existence of disputed facts, including whether Mr. Newkirk "interjected himself in the arrest," precluded granting summary judgment on the basis of qualified immunity.

In Mrs. Newkirk's case, however, the district court declined to adopt the magistrate judge's report and recommendation. Considering Mrs. Newkirk's false arrest claim, the court found that although Enzor "was motivated solely by a retaliatory impulse" in arresting Mrs. Newkirk, Enzor was nonetheless entitled to qualified immunity as a matter of law because Mrs. Newkirk's "right to be free of a retaliatory arrest when separate probable cause exist[ed] to arrest [her] ha[d] not been clearly enough established to require a reasonable officer to be aware of it." C.J.A. 402-03.

8

With respect to Mrs. Newkirk's excessive force claim, the district court denied Enzor summary judgment on the merits, finding that Mrs. Newkirk had been cooperative and non-threatening during the traffic stop, while Enzor "turned rapidly to physical force." C.J.A. 405. Turning to the issue of Enzor's entitlement to qualified immunity, the court found that disputed material facts—namely the "verbal exchanges between [Enzor and Mrs. Newkirk] and the physical struggle that took place after they moved out of view of the video"—likewise rendered granting summary judgment on the basis of qualified immunity inappropriate. C.J.A. 407.

These appeals followed.[3]

## II.

"[Q]ualified immunity operates to protect law enforcement and other government officials from civil damages liability for alleged constitutional violations stemming from their discretionary functions." Raub v. Campbell, 785 F.3d 876, 880–81 (4th Cir. 2015). "Our qualified immunity analysis typically involves two inquiries: (1) whether the plaintiff has established the violation of a constitutional right, and (2)

---

[3] The Newkirks moved to dismiss Enzor's interlocutory appeals on jurisdictional grounds, and we deferred ruling pending oral argument.

9

whether that right was clearly established at the time of the alleged violation." Id. at 881. We are free to "address these two questions in the order [ ] that will best facilitate the fair and efficient disposition of each case." Id. (internal quotations omitted).

Because "[q]ualified immunity is an 'immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" Iko, 535 F.3d at 233-34 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). To ensure that "insubstantial claims against government officials will be resolved prior to discovery," the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Pearson v. Callahan, 555 U.S. 223, 231-32 (2009) (internal quotations omitted). Nonetheless, "summary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of the defendants." Vathekan v. Prince George's Cty., 154 F.3d 173, 180 (4th Cir. 1998) (internal quotations omitted). This is because "[d]isputed facts are treated no differently in this portion of the qualified immunity analysis than in any other context." Buonocore v. Harris, 65 F.3d 347, 359 (4th Cir. 1995) (citing Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir. 1992)).

We have jurisdiction to review a district court's denial of a claim of qualified immunity, "to the extent that it turns on an issue of law." Iko, 535 F.3d at 234 (citing Mitchell, 472 U.S. at 530). Critically, this review is limited to issues of law; we possess no jurisdiction to review a district court's determination that "the pretrial record sets forth a 'genuine' issue of fact for trial." Gould v. Davis, 165 F.3d 265, 268 (4th Cir. 1998) (quoting Johnson v. Jones, 515 U.S. 304, 320 (1995)).

A.

We begin with Enzor's interlocutory appeal as to Mr. Newkirk's false arrest claim. Enzor contends that, "[d]espite the fact that the entire encounter between [Mr.] Newkirk and Enzor was captured on recorded video and audio," the district court erroneously determined that disputed facts precluded it from conducting the qualified immunity analysis. Appellant's Br. at 9. Mr. Newkirk urges dismissal of Enzor's appeal, characterizing Enzor's arguments as an impermissible attempt to have us review the district court's decision to deny summary judgment on the issue of qualified immunity because there existed genuine issues of material fact.

As an initial matter, we reject Enzor's assertion that the "entire encounter" between Mr. Newkirk and Enzor was recorded on audio and video. The district court and the magistrate judge

11

expressly found that much of the conversation between Mr. Newkirk and Enzor is inaudible, and our own review confirms this finding. With that as a backdrop, "our first task on appeal is to separate the district court's legal conclusions regarding entitlement to qualified immunity, over which we have jurisdiction, from its determinations regarding factual disputes, over which we do not." Iko, 535 F.3d at 234. We must also carefully parse Enzor's "arguments to ensure that we only consider those legal questions formally raised on appeal." Id. at 235.

Applying these principles, we conclude that we lack jurisdiction to consider Enzor's arguments regarding Mr. Newkirk's unlawful arrest claim. Enzor is entitled to qualified immunity unless a reasonable officer in his position would have known that arresting Mr. Newkirk under the circumstances would violate Mr. Newkirk's constitutional right to be free from an arrest not based on probable cause. See Rogers v. Pendleton, 249 F.3d 279, 290 (4th Cir. 2001). Here, the district court determined that it could not resolve this issue because what Mr. Newkirk said during the traffic stop is in dispute. For example, in contrast to Enzor's assertions in the arrest warrant that Mr. Newkirk "repeatedly instruct[ed] and coerce[d]" Mrs. Newkirk to disregard Enzor's instructions, J.J.A. 73, Mr.

12

Newkirk alleges that he merely sought to inquire about the events taking place and told Enzor to "calm down." J.J.A. 333.

Given these disputed facts, Enzor's entitlement to qualified immunity rests on whether Mr. Newkirk's actions and words were sufficient to render the arrest lawful. In other words, "the version of facts ultimately accepted by the fact finder," specifically, what Mr. Newkirk said to Enzor and his wife during Mrs. Newkirk's arrest, "will dictate the outcome of the constitutional inquiry." Culosi v. Bullock, 596 F.3d 195, 203 n.6 (4th Cir. 2010) (emphasis omitted). As a result, we have no jurisdiction to address this issue in an interlocutory appeal. See Vathekan, 154 F.3d at 179-80 (summary judgment on qualified immunity grounds is precluded where "[a] factual issue critical to resolution of [qualified immunity] is contested").

### B.

We next consider Enzor's interlocutory appeal as to Mrs. Newkirk's excessive force claim. Here, too, the district court denied Enzor qualified immunity on the ground that disputed facts "regarding the actual conduct of the defendant[]" rendered summary judgment improper. C.J.A. 407 (quoting Vathekan, 154 F.3d at 180).

"A claim of excessive force is analyzed under the Fourth Amendment standard of objective reasonableness." Culosi, 596 F.3d at 201 (citing Graham v. Connor, 490 U.S. 386, 395 (1989)).

13

And "[r]easonableness is determined by the information possessed by the officer at the moment the force is employed." Id.

On appeal, Enzor argues that "the facts of what actually happened during the traffic stop and the force deployed in the process are not in dispute" and that "the recorded video and audio confirms [Mrs. Newkirk's] sworn testimony that she resisted Enzor's constitutionally authorized placement of the handcuffs and efforts to place her in the vehicle." Appellant's Br. at 14. Enzor's contention, however, ignores the district court's findings that "[Mrs.] Newkirk did not pose an immediate threat to Enzor's safety at the time, nor was she actively resisting arrest or attempting to evade arrest," and further that disputed "relevant details of the encounter are not visible on the video," including the "physical struggle that took place after [Enzor and Mrs. Newkirk] moved out of view of the video." C.J.A. 406.

In sum, the legal question of whether Enzor is entitled to qualified immunity as to Mrs. Newkirk's excessive force claim "depends entirely on a credibility determination" between Mrs. Newkirk's and Enzor's diverging portrayals of the traffic stop, and as such, is "inappropriate for resolution by summary judgment." See Rainey v. Conerly, 973 F.2d 321, 323-24 (4th Cir. 1992) (affirming denial of summary judgment to prison guard on qualified immunity grounds where the trier of fact's

14

determination of "what actually happened" in the excessive force case was "absolutely necessary" to resolve whether the guard could reasonably believe that his actions were lawful for purposes of qualified immunity). Enzor's appeal, which amounts to little more than an attempt to "argue the insufficiency of the evidence to raise a genuine issue of material fact," must therefore be dismissed for lack of jurisdiction.[4] Valladares v. Cordero, 552 F.3d 384, 388 (4th Cir. 2009).

## III.

For the reasons given, these interlocutory appeals are

DISMISSED.

---

[4] We do not suggest that Enzor could not use appropriate force to handcuff and arrest Mrs. Newkirk. Indeed, it is well established that "the right to make an arrest carries with it the right to use a degree of physical coercion or threat thereof to effect the arrest." Brown v. Gilmore, 278 F.3d 362, 369 (4th Cir. 2002). We merely conclude that Enzor's argument, based on a challenge to the district court's determination that the record sets forth a genuine issue of fact for trial, is "one not open to consideration to us on interlocutory appeal." Culosi, 596 F.3d at 203.

15