**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

### No. 19-1697

NATHANIEL HICKS,

 Plaintiff – Appellee,

 v.

OFFICER GERALD L. FERREYRA, in his individual capacity; OFFICER BRIAN A. PHILLIPS, in his individual capacity,

 Defendants – Appellants.

Appeal from the United States District Court for the District of Maryland at Greenbelt. Paul W. Grimm, District Judge.  (8:16-cv-02521-PWG)

Submitted:  May 18, 2020

Decided:  July 14, 2020

Before MOTZ, KEENAN, and HARRIS, Circuit Judges.

Affirmed in part and dismissed in part by published opinion.  Judge Harris wrote the opinion, in which Judge Motz and Judge Keenan joined.

Andrew C. White, Jodie E. Buchman, SILVERMAN, THOMPSON, SLUTKIN & WHITE, Baltimore, Maryland, for Appellants.  Jia Cobb, Yiyang Wu, RELMAN, DANE & COLFAX PLLC, Washington, D.C., for Appellee.

PAMELA HARRIS, Circuit Judge:

This appeal arises from two traffic stops in which United States Park Police officers allegedly seized Nathaniel Hicks in violation of the Fourth Amendment. Hicks filed suit for damages against the federal officers, invoking the implied cause of action recognized in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The officers moved for summary judgment on qualified immunity grounds. The district court denied their motion, finding that the factual record, viewed in the light most favorable to Hicks, precluded an award of qualified immunity on summary judgment.

On appeal, the officers argue – for the first time – that no *Bivens* remedy is available to Hicks, because applying *Bivens* here would constitute an improper extension of that case into a "new context." *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017). And according to the officers, the district court committed reversible error when it failed to take up that question *sua sponte* and dismiss Hicks's action under *Abbasi*. We disagree. Contrary to the officers' suggestion, our well-established forfeiture rules govern here, and those rules do not allow the officers to raise before us a claim they never pressed in the district court.

The officers also argue that the district court erred in denying them summary judgment based on qualified immunity, pointing to instances in which they believe the district court misconstrued the record evidence. In this interlocutory posture, however, our jurisdiction is limited to issues of law, and does not permit us to review a district court's assessment of the factual record. We therefore dismiss this portion of the officers' appeal.

## I.

## A.

Because this is an interlocutory appeal of a denial of qualified immunity, we recount the facts as the district court viewed them – that is, in the light most favorable to the plaintiff, Nathaniel Hicks, drawing all justifiable inferences in his favor. *See Winfield v. Bass*, 106 F.3d 525, 529–30 (4th Cir. 1997) (en banc).

In the early morning hours of July 11, 2015, Nathaniel Hicks – then an agent of the United States Secret Service – was parked on the shoulder of Interstate 295 North in Maryland, waiting to lead an oncoming motorcade in his government-assigned vehicle, which had a police antenna, strobing bar, and illuminated emergency lights. At approximately 6:00 a.m., Gerald Ferreyra – an officer with the United States Park Police ("USPP") – parked his police cruiser behind Hicks's government vehicle and approached, initiating what would become the first of the two stops of Hicks, this one lasting for between 40 and 60 minutes.

As he approached, Ferreyra saw Hicks's service weapon – a handgun – inside Hicks's car, and drew his own weapon. Hicks quickly identified himself to Ferreyra as a Secret Service agent and displayed his credentials, including a photograph of himself and a description of his mission. Ferreyra seized Hicks's service weapon and credentials, and took them back to his police cruiser for verification. Ferreyra since has acknowledged that Hicks's credentials "looked legit," and that he had no "reason to doubt" their validity. *Hicks v. Ferreyra*, 396 F. Supp. 3d 564, 578 (D. Md. 2019).

3

Despite fully satisfying himself that Hicks was, in fact, a Secret Service agent who was authorized to carry a handgun under both state and federal statutes, *see* Md. Code Ann., Crim. Law § 4-203(b)(1)(i); 18 U.S.C. § 3056(c)(1)(B), Ferreyra continued detaining Hicks while calling for additional officers to report to the scene. Next to arrive was Brian Phillips, also an officer with the USPP. And although Phillips, too, soon learned that Hicks was a Secret Service agent, Phillips assisted in Hicks's continued detention while Ferreyra called for a third USPP officer – this time, a supervisor – to come to the scene as well. Ferreyra since has confirmed that he had no intention of arresting Hicks when calling his supervisor. But Ferreyra and Phillips continued to detain Hicks and to maintain possession of Hicks's service weapon and credentials. By now, the motorcade that Hicks had been assigned to lead had come and gone.

After the motorcade passed, the USPP supervisor arrived and informed Hicks that he was free to leave, and Ferreyra returned Hicks's weapon and credentials and allowed Hicks to leave the scene. By then, it was between 6:40 and 6:59 a.m., or 40 to 59 minutes after the stop was initiated at 6:00 a.m. And by no later than 6:25 a.m. – and perhaps much earlier – the USPP officers were fully aware that Hicks was an on-duty Secret Service agent authorized to carry a weapon, but they nevertheless continued the detention.

The second stop at issue occurred only minutes later, when Hicks, almost as soon as he had left the scene of his initial detention, was pulled over by Phillips. Hicks "was not driving erratically," *Hicks*, 396 F. Supp. 3d at 580, and Phillips "knew it was Agent Hicks's vehicle he was stopping," *id.* at 579. Phillips approached Hicks's vehicle and said: "I noticed when you departed the scene you were on the phone. It's against the law in the

4

State of Maryland for an officer to be on the phone" while driving. *Id.* at 572. (In fact, Maryland law expressly permits law enforcement officers like Hicks to use their cellphones while driving. *Id.* at 580 (citing Md. Code Ann., Transp. § 21-1124.2(b)(2)(i))). Although Phillips concedes that he recognized Hicks when he approached his car, he nevertheless demanded Hicks's license and registration and detained him further before ultimately releasing him.

**B.**

In July of 2016, Agent Hicks filed a *Bivens* action for damages against Officers Ferreyra and Phillips, alleging that the officers had violated his clearly established Fourth Amendment rights by unlawfully seizing him twice without probable cause or reasonable suspicion. The officers ultimately moved for summary judgment on Hicks's Fourth Amendment *Bivens* claim, alleging that they were entitled to qualified immunity. At no point did the officers question whether Hicks could avail himself of the implied cause of action for damages recognized by the Supreme Court in *Bivens*.

The district court denied the officers' motion for summary judgment on Hicks's Fourth Amendment claims, finding that the officers had not demonstrated their entitlement to qualified immunity as a matter of law.[1] The court began by outlining the law governing the qualified-immunity inquiry, which is the same under *Bivens* as in the § 1983 context. *See Hicks*, 396 F. Supp. 3d at 574 (citing *Wilson v. Layne*, 526 U.S. 603, 609 (1999)).

---

[1] The district court granted the officers' motion for summary judgment with respect to Agent Hicks's 42 U.S.C. § 1985(1) conspiracy claim. Hicks has not appealed that ruling.

Under that doctrine, the officers are entitled to qualified immunity unless "(1) the allegations, if true, substantiate a violation of a federal statutory or constitutional right and (2) the right was 'clearly established' such that a reasonable person would have known his acts or omissions violated that right." *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011) (internal quotation marks omitted). In the officers' view, the district court explained, the analysis could begin and end under the first prong, because "both of their detentions of Hicks were reasonable under the circumstances," and so there was no Fourth Amendment violation. *Hicks*, 396 F. Supp. 3d at 574. But under either prong of the inquiry, the court concluded, the officers bear the burden of proving their entitlement to qualified immunity. *See id.* at 575.

With respect to the first stop, the court started by clarifying the nature of Hicks's claim. Hicks did not challenge the initiation of the first stop, when Ferreyra observed Hicks's car and then his service weapon. Instead, Hicks invoked the well-settled doctrine that a seizure that is lawful at its inception may become constitutionally unreasonable if it lasts "longer than is necessary to effectuate" its purpose. *Id.* at 576 (quoting *United States v. Sharpe*, 470 U.S. 675, 684 (1985)). According to Hicks, his stop, which lasted for up to an hour, became constitutionally unreasonable once the officers had determined that he was an on-duty Secret Service agent authorized to carry his weapon, thus dispelling any reasonable suspicion and "effectuat[ing] the purpose of the stop." *Id.* at 578 (quoting *Sharpe*, 470 U.S. at 685).

Viewing the record evidence in the light most favorable to Hicks, the district court determined that the officers had assuaged any concerns about Hicks and knew that he was

6

an on-duty Secret Service agent by no later than 6:25 a.m. – or between 15 and 35 minutes before finally releasing Hicks. *See id.* at 577–78. To justify their continued detention of Hicks, the officers argued primarily that because Hicks disagreed with Ferreyra about the circumstances of their encounter, it was "customary protocol" to detain Hicks until a supervisor arrived on the scene, even after reasonable suspicion had been dispelled. *Id.* at 578. But the district court – considering the full evidentiary record, including Officer Ferreyra's own deposition testimony, in the light most favorable to Hicks – found "no evidence that the Park Police were following an established protocol when they continued to detain Agent Hicks for more than fifteen minutes after they knew that he was an on duty Secret Service agent." *Id.* at 579. Accordingly, the officers were not entitled to summary judgment on their claim that the continued detention of Hicks was "reasonable under the circumstances." *Id.* Nor were the officers entitled to qualified immunity as a matter of law under the "clearly established" prong of the inquiry: "[D]etaining [Hicks] under these circumstances – when the officers had a reasonable suspicion that criminal activity was underway but, after some investigation, became aware that no criminal activity was happening at the scene" – would be a violation of "clearly established" Fourth Amendment rights. *Id.*

Hicks did challenge the initiation of his second stop, arguing that he was pulled over by Officer Phillips – mere moments after leaving the scene of his initial prolonged detention – without justification. Here, the district court identified multiple "genuine dispute[s]" of material fact: The parties disputed whether Phillips recognized Hicks's car before he pulled it over or, as Phillips conceded, recognized Hicks once he approached the

7

car; whether Phillips left the scene of the first detention after Hicks, making it more likely that he would have recognized Hicks's car; and whether Hicks was driving erratically when Phillips initiated the stop. *Id.* at 579–80. But viewing the record in the light most favorable to Hicks, the district court determined that Phillips left the scene after Hicks and knew it was Hicks's car he was pulling over, and that Hicks was not driving erratically at the time. *See id.*

Phillips also cited Hicks's use of a cell phone as justification for the stop. But the district court went on to find that once Phillips recognized Hicks as the same Secret Service agent he had just detained – concededly no later than when Phillips approached Hicks in his car – he had no basis to suspect Hicks of violating Maryland's prohibition on the use of cell phones while driving, which clearly does not apply to on-duty law enforcement officers, or to continue to detain Hicks while demanding his license and registration. *See id.* at 580. Accordingly, Phillips could not show, as a matter of law, "a particularized, objective basis" to justify his stop of Hicks under the Fourth Amendment. *Id.* Nor, again, could Phillips show that the alleged Fourth Amendment violation was not "clearly established" for qualified immunity purposes. *Id.*

The officers timely appealed the district court's denial of summary judgment on qualified immunity grounds.

## II.

### A.

We review de novo a district court's denial of qualified immunity at summary judgment. *See Cox v. Quinn*, 828 F.3d 227, 235 (4th Cir. 2016). The standard we apply is

8

the same as that used by the district court: We view the facts in the light most favorable to the nonmoving party – here, Agent Hicks – and recognize that summary judgment may be granted only if "no material facts are disputed" and the officers are "entitled to judgment as a matter of law" on their qualified immunity claim. *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003); *see also Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc); Fed. R. Civ. P. 56(a).

The scope of our review is further limited by the procedural posture of this appeal. As a general matter, denials of summary judgment are interlocutory orders not subject to appellate review. *See Williams v. Strickland*, 917 F.3d 763, 767 (4th Cir. 2019). There is an exception, however, for denials of summary judgment as to qualified immunity, which may be appealed immediately under the collateral order doctrine. *See id.* at 768. But such interlocutory appeals are limited to legal questions: Our jurisdiction extends only to the denial of qualified immunity "to the extent it turns on *an issue of law*." *Gould v. Davis*, 165 F.3d 265, 268 (4th Cir. 1998) (emphasis added). "Whether we agree or disagree with the district court's assessment of the record evidence," in other words, "is of no moment in the context of [an] interlocutory appeal." *Culosi v. Bullock*, 596 F.3d 195, 201 (4th Cir. 2010); *see also Hensley ex rel. North Carolina v. Price*, 876 F.3d 573, 579 (4th Cir. 2017) ("In this procedural posture, we may not credit defendant[s'] evidence, weigh the evidence, or resolve factual disputes in the defendants' favor."). Instead, our review of the district court's judgment is "limited to [one] narrow legal question: *if we take the facts as the district court gives them to us*, and we view those facts in the light most favorable to the

plaintiff," are the defendant officers "still entitled to qualified immunity?" *Strickland*, 917 F.3d at 768 (emphasis added) (footnote omitted).

**B.**

Before turning to qualified immunity, we consider the officers' late-breaking argument that Hicks's constitutional claim should have been dismissed at the outset because he lacks a cause of action under *Bivens*.[2]

In *Bivens*, the Supreme Court recognized an implied cause of action for certain damages suits against federal officials who violate constitutional rights – there, against federal law enforcement officers who allegedly violated the Fourth Amendment through a warrantless search and arrest and the unreasonable use of force. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 395–96 (1971). In the decade following *Bivens*, the Court recognized that implied cause of action in two cases involving other constitutional violations. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854–55 (2017) (describing *Davis v. Passman*, 442 U.S. 228 (1979) and *Carlson v. Green*, 446 U.S. 14 (1980)). Since then, however, the Court has "disfavored" expansions of *Bivens*, and

---

[2] The parties assume that we have jurisdiction to consider this question, despite the absence of a final order. As noted above, though interlocutory appeals ordinarily are not permitted, there is an exception for denials of summary judgment based on qualified immunity. And the Supreme Court has held that at least in some circumstances, that exception also allows us to review the underlying legal question of whether a *Bivens* cause of action should be recognized. *See Wilkie v. Robbins*, 551 U.S. 537, 549 n.4 (2007). We need not iron out that jurisdictional wrinkle here, however: Appellate courts may resolve a case on a threshold non-merits ground without first addressing jurisdiction, and our ruling is based on the threshold ground of forfeiture. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (appellate courts may "choose among threshold grounds for denying audience to a case on the merits" (internal quotation marks omitted)).

"refused to extend *Bivens* to any new context or new category of defendants." *Id.* at 1857 (internal quotation marks omitted). And in *Abbasi*, on which the officers chiefly rely, the Supreme Court "clarified the framework" used to determine whether a *Bivens* remedy is available, *Tun-Cos v. Perrotte*, 922 F.3d 514, 522 (4th Cir. 2019): If a case presents a "new *Bivens* context" – that is, if it is "different in [any] meaningful way" from the Supreme Court's three *Bivens* cases – then courts may not extend *Bivens* liability if there are "special factors counseling hesitation." *Id.* (quoting *Abassi*, 137 S. Ct. at 1857, 1859). If the "context is *not* new," on the other hand, "then [the] *Bivens* remedy continues to be available." *Id.*

Here, the officers argue that their case – notwithstanding its similarities to *Bivens*, which likewise involved a Fourth Amendment claim against federal law enforcement officers – presents a "new *Bivens* context," and that allowing it to proceed runs afoul of *Abbasi*. Crucially, the officers raise this argument for the first time on appeal: At no point during the lengthy proceedings in the district court did the officers argue or even suggest that Hicks lacked a cause of action under *Bivens*. We thus conclude that this argument is forfeited on appeal.

It is well established that this court "do[es] not consider issues raised for the first time on appeal," "[a]bsent exceptional circumstances." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 242 (4th Cir. 2009) (internal quotations marks omitted). Rather, "[w]hen a party in a civil case fails to raise an argument in the lower court and instead raises it for the first time before us, we may reverse only if the newly raised argument establishes 'fundamental error' or a denial of fundamental justice." *In re Under Seal*,

11

749 F.3d 276, 285 (4th Cir. 2014) (citation omitted). This rigorous standard is an even higher bar than the "plain error" standard applied in criminal cases, *see Stewart v. Hall*, 770 F.2d 1267, 1271 (4th Cir. 1985) (explaining that in a civil case such a "fundamental error" must be "so serious and flagrant that it goes to the very integrity" of the proceedings (internal quotations marks omitted)), and the burden is on the party who has failed to preserve an argument to show that the standard is met, *see Under Seal*, 749 F.3d at 292.

The officers do not dispute any of this longstanding doctrine. Instead they argue, in effect, that it does not apply here, because the error of which they complain is non-waivable. According to the officers, *Abbasi* sets out a framework "that now *must* be applied in determining whether a *Bivens* remedy is available against a federal official," under which courts first "*must* inquire whether a given case presents a 'new *Bivens* context,'" and, if it does, then it "*must*, before extending *Bivens* liability, evaluate whether there are 'special factors counselling hesitation.'" *Tun-Cos*, 922 F.3d at 522–23 (emphasis altered from original) (citing *Abbasi*, 137 S. Ct. at 1857, 1859). And because the *Abbasi* analysis is mandatory, the officers argue, the district courts are obliged to take up the question *sua sponte*, even if the defendants in a *Bivens* action do not raise it.

We disagree. As a general rule, "the parties' litigation conduct" determines what issues are properly before a court, and a defense may be "forfeited if the party asserting [it] waits too long to raise the point." *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004). There is an exception for rules governing subject-matter jurisdiction, which may be raised by a party at any time or by a court on its own initiative. *See id.* (distinguishing between subject-matter jurisdiction, which may not be forfeited, and inflexible claims-processing

12

rules, which may); *see also Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("Subject-matter jurisdiction can never be waived or forfeited."). But the availability of a *Bivens* cause of action does not fall within that exception, because it is not an issue that implicates a court's subject-matter jurisdiction. *See Air Courier Conference of Am. v. Am. Postal Workers Union*, 498 U.S. 517, 523 n.3 (1991) ("Whether a cause of action exists is not a question of jurisdiction . . . ."). Nor have the officers pointed to any other source of authority for treating the availability of a *Bivens* remedy as within the limited category of non-waivable legal issues.[3]

Instead, the officers fixate entirely on the idea that we have used "mandatory" language in describing the two-step analysis clarified in *Abbasi*, referring to it as a "framework that now *must* be applied in determining whether a *Bivens* remedy is available." *Tun-Cos*, 922 F.3d at 522 (emphasis added). But this is a simple category mistake. To say that a court must apply a given analysis when it addresses a question is not to say that the court must address that question *sua sponte* when nobody has raised it. For instance, as the officers explain elsewhere in their briefs, in deciding whether a seizure is "reasonable" under the Fourth Amendment, courts "*must* look to" all surrounding facts and circumstances, taken together. Appellants' Reply Br. at 10–11. But that does not mean

---

[3] The Third Circuit's decision in *Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018), on which the officers do rely, is not to the contrary. In that case, the court decided that it would *excuse* a defendant's failure to raise the availability of a *Bivens* remedy in district court "in the interests of justice." *Id.* at 89. As we have explained, we, too, sometimes may exercise our discretion to hear claims raised for the first time on appeal. *See, e.g.*, *United States v. Simms*, 914 F.3d 229, 238 n.4 (4th Cir. 2019) (en banc). But an exercise of that discretion does not transform a claim into one that is non-waivable.

that courts must *raise* the question of whether a seizure was reasonable *sua sponte* if nobody has argued the point, and it has been established for almost a century that a defendant has no right to raise that question for the first time on appeal. *See Segurola v. United States*, 275 U.S. 106, 112 (1927) (failure to object waives Fourth Amendment claim for suppression based on unlawful search and seizure).

That leaves us with our standard forfeiture and waiver principles, under which we will consider an issue not raised before the district court only in "exceptional circumstances" and reverse only if the proponent of the newly discovered argument can establish "fundamental error." *Under Seal*, 749 F.3d at 285 (internal quotation marks omitted). But the officers here have provided no explanation at all for why they did not raise their *Bivens*-extension argument in the district court; the case on which they chiefly rely, *Ziglar v. Abassi*, was decided over a year before they submitted their summary judgment briefs to the district court, and itself merely "clarified" what already was well-established case law, *Tun-Cos*, 922 F.3d at 522. Nor have the officers contended at all with our "fundamental error" standard or attempted to show that they can meet it here. For that reason alone, the officers have failed to satisfy their burden of establishing the kind of "fundamental error" that might warrant reversal on a ground not raised before the district court. *See Under Seal*, 749 F.3d at 292 (holding that failure to argue on appeal for fundamental error "marks the end of the road for [an] argument for reversal not first presented to the district court" (internal quotation marks omitted)).

Nor are we concerned that holding the officers to the normal consequences of this second forfeiture might risk a "denial of fundamental justice." *Id.* at 285. The crux of the

14

officers' claim, as described above, is that this case presents a "new *Bivens* context," different in some "meaningful way" from cases in which the Supreme Court already has recognized a *Bivens* remedy. *Tun-Cos*, 922 F.3d at 522–23 (quoting *Abbasi*, 137 S. Ct. at 1859). But along every dimension the Supreme Court has identified as relevant to the inquiry, this case appears to represent not an extension of *Bivens* so much as a replay: Just as in *Bivens*, Hicks seeks to hold accountable line-level agents of a federal criminal law enforcement agency, for violations of the Fourth Amendment, committed in the course of a routine law-enforcement action. *Cf. Abbasi*, 137 S. Ct. at 1860 (listing examples of "meaningful" differences signaling a *Bivens* expansion, including "the rank of the officers involved," "the constitutional right at issue," and "the statutory or other legal mandate under which the officer was operating"). Indeed, courts regularly apply *Bivens* to Fourth Amendment claims arising from police traffic stops like this one. *See, e.g.*, *Schultz v. Braga*, 455 F.3d 470, 479 (4th Cir. 2006) (permitting *Bivens* claim for officer's use of excessive force during traffic stop); *McLeod v. Mickle*, 765 F. App'x 582, 584–85 (2d Cir. 2019) (cognizable *Bivens* claim for Fourth Amendment violation during traffic stop by federal officer that is "prolonged beyond the time reasonably required to complete [the] mission"); *Martin v. Malhoyt*, 830 F.2d 237, 263 (D.C. Cir. 1987) (*Bivens* claims against USPP officer for Fourth Amendment violations that occurred during the course of a traffic stop). On the record before us, enforcing our standard forfeiture rule works no fundamental injustice.

## C.

We turn now to the officers' challenge to the district court's rulings on qualified immunity. We conclude that we lack jurisdiction to consider this portion of the officers' appeal, because the officers contest only the district court's assessment of the factual record and raise no reviewable questions of law. *See Davis*, 165 F.3d at 268 (limiting interlocutory review of denials of qualified immunity to issues of law).

We emphasize at the outset what the officers are *not* challenging on appeal. They do *not* argue that "if we take the facts as the district court [gave] them to us," *Strickland*, 917 F.3d at 768, then the district court erred as a legal matter when it found that the alleged conduct violated the Fourth Amendment, because the officers unreasonably extended Hicks's first stop and conducted an immediate second stop without sufficient justification. Nor do the officers take issue with the second step of the district court's qualified immunity analysis, arguing that any Fourth Amendment violation they may have committed was not "clearly established" at the time of the incident.

Instead, the officers seek review of a question that we may not consider in this interlocutory posture: whether the district court properly assessed the factual record in front of it. *See Culosi*, 596 F.3d at 201 ("Whether we agree or disagree with the district court's assessment of the record evidence on that issue, however, is of no moment in the context of this interlocutory appeal."). With respect to the first stop, the officers' argument centers exclusively on the district court's finding that the lack of record support for a purported "customary protocol" supporting Hicks's lengthy detention precluded the award of summary judgment. According to the officers, the district court misconstrued the record

16

in making that determination, improperly refusing to consider evidence of an unwritten protocol. We tend to read the district court's carefully reasoned opinion differently, but that is "of no moment" in this posture, *id.*: Such "*fact*-related dispute[s] about the pretrial record" fall outside our limited jurisdiction. *Johnson v. Jones*, 515 U.S. 304, 307 (1995).

The same is true of the second stop, as to which the officers again raise exclusively fact-based arguments. Here, the officers' focus is on the district court's determination that the factual record – read in the light most favorable to Hicks, and resolving all material factual disputes in his favor – showed that Officer Phillips left the scene of the first stop just after Hicks and recognized Hicks's car before he pulled it over, and that Hicks was not driving erratically at the time. *See Hicks*, 396 F. Supp. 3d at 579–80. According to the officers, the district court again erred in its assessment of the record, this time by disregarding Phillips's own deposition testimony to the contrary. Competing deposition testimony, of course, is precisely what gives rise to the kind of genuine dispute of fact identified by the district court. But again, whatever the merits of the officers' argument, it is not one we may consider here, where our jurisdiction is limited to legal questions. *See Iko v. Shreve*, 535 F.3d 225, 234 (4th Cir. 2008) ("[W]e lack jurisdiction to re-weigh the evidence in the record to determine whether material factual disputes preclude summary disposition.").

Accordingly, we dismiss the officers' appeal of the district court's qualified immunity holding for lack of jurisdiction.

17

## III.

For the foregoing reasons, we dismiss this appeal in part and otherwise affirm the district court's order denying summary judgment.

*AFFIRMED IN PART AND DISMISSED IN PART*