**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-2391

KATRINA REEVES, individually and as Executrix of the Estate of James Lee Reeves,

Plaintiff - Appellee,

v.

HOWARD MEDDINGS, individually,

Defendant - Appellant,

and

WAYNE COUNTY BOARD OF EDUCATION; WAYNE COUNTY; WAYNE COUNTY COMMISSION; WAYNE COUNTY SHERRIF RICHARD THOMPSON, individually; TODD ALEXANDER, individually; DEPUTY HARRY SOWARDS, individually,

Defendants.

Appeal from the United States District Court for the Southern District of West Virginia, at Huntington.  Robert C. Chambers, District Judge.  (3:20-cv-00423-RCC)

Argued:  September 16, 2022                    Decided:  November 21, 2022

Before AGEE and HARRIS, Circuit Judges, and MOTZ, Senior Circuit Judge

Dismissed in part, vacated in part, and remanded by unpublished opinion.  Judge Harris wrote the opinion, in which Judge Agee and Senior Judge Motz joined.

**ARGUED:** Perry W. Oxley, OXLEY RICH SAMMONS, PLLC, Huntington, West Virginia, for Appellant. Hoyt Eric Glazer, GLAZER SAAD ANDERSON L.C., Huntington, West Virginia, for Appellees. **ON BRIEF:** David E. Rich, Samantha J. Fields, OXLEY RICH SAMMONS, PLLC, Huntington, West Virginia, for Appellant. Abraham J. Saad, Eric B. Anderson, GLAZER SAAD ANDERSON L.C., Huntington, West Virginia, for Appellees.

———————————

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

The plaintiffs in this action, James and Katrina Reeves, allege that a supervisor at a school bus facility in Wayne County, West Virginia, falsely accused them of stealing from the facility, and then conspired with other Wayne County officials to falsify evidence against them and cause their arrests. The defendant supervisor, Howard Meddings, moved for summary judgment, asserting federal qualified immunity and statutory immunity under West Virginia law. The district court denied summary judgment and Meddings filed an appeal.

Because Meddings's fact-based challenge to the denial of state statutory immunity falls outside our jurisdiction in this interlocutory posture, we must dismiss that part of his appeal. But we agree with Meddings that the district court did not consider his federal qualified immunity claim under the proper legal standard. Accordingly, we vacate the district court's judgment in part and remand so that the district court may undertake the correct qualified immunity analysis in the first instance.

## I.

### A.

In this interlocutory appeal of a denial of immunity, and except as otherwise noted, we recount the facts as the district court viewed them – that is, in the light most favorable to the plaintiffs, James and Katrina Reeves, drawing all justifiable inferences in their favor. *See Hicks v. Ferreyra*, 965 F.3d 302, 305 (4th Cir. 2020).

3

This case arises from an alleged break-in at the Wayne County Board of Education bus garage and the investigation that followed.  Howard Meddings, a defendant in this action, is a Board of Education employee and a parts supervisor at the garage.  He was involved in the investigation of the break-in, which centered around two of his Board of Education co-employees:  plaintiff James Reeves, who worked alongside Meddings in the bus parts "barn," and his wife and co-plaintiff Katrina Reeves, who worked as a bus driver. The investigation was led by Wayne County Deputy Sherriff Harry Sowards – a longtime friend of Meddings's.

The gist of the plaintiffs' claim, as relevant here, is that Meddings and Sowards worked together, along with other WCBOE employees, to frame James and Katrina for theft and to effectuate their false arrests and other violations of their Fourth and First Amendment rights.  According to the plaintiffs, Meddings had a long history of animus towards them and an especially fraught relationship with James Reeves:  James and Meddings had once applied for the same job, with the position going to James, and Meddings had filed multiple grievances against James.  But despite this history, the plaintiffs assert, Meddings was permitted to play a key role in the investigation of the break-in.

Throughout the investigation, Meddings allegedly spread information he knew to be false to implicate the plaintiffs.  He also inserted himself centrally into the criminal inquiry led by his friend Sowards, texting and meeting with Sowards privately about the case. Meddings was on the scene with law enforcement during the search of the Reeveses' home, identifying items purportedly stolen from the garage.  Through Deputy Sowards, the

4

plaintiffs allege, he obtained pictures and texts gathered from a search of James Reeves's cell phone, which he planned to use against the Reeveses. And he further tainted the investigation by contacting other bus garage employees and discouraging them from cooperating in the Reeveses' private investigation to prepare for filing of this § 1983 action.

As a result of the investigation, the plaintiffs were arrested. James Reeves was charged with three counts of felony embezzlement, and both Reeveses were charged with conspiracy to embezzle. The conspiracy charges were soon dropped, but James Reeves was indicted for embezzlement by a grand jury after Deputy Sowards presented the case against him.

James Reeves moved to dismiss the indictment, arguing that Sowards had testified falsely before the grand jury. The state court agreed and issued an order explaining that it was prepared to dismiss the case on that ground. Sowards, the court found, had indeed presented false and material evidence to the grand jury, and his confessed "mistakes" were so frequent that they were "reckless at best" and warranted dismissal of the indictment "as misleading to the jury." J.A. 663. But because James Reeves passed away before the court could issue its decision, the court dismissed the charges against Reeves on that basis, instead, and dismissed his motion as moot.[1]

---

[1] Mr. Reeves died unexpectedly on November 27, 2021, after this suit was filed in the district court. Mrs. Reeves moved to proceed with the suit both in her own capacity and as executrix of her husband's estate, and pursues this appeal in the same capacities. For ease of reference, we continue to refer in this opinion to James and Katrina Reeves as the plaintiffs. The question of which of Mr. Reeves's original claims, if any, survive his death has been briefed in the district court, and we leave that issue to the district court in the first instance.

5

Because of the criminal charges brought against them, the Reeveses were terminated from their jobs. Their arrests and termination were covered by local news publications and media, humiliating the Reeveses and allegedly damaging their reputations.

**B.**

In August 2020, the Reeveses filed an eleven-count complaint against Meddings, Sowards, and several other county entities and officials. Relevant to this appeal are the three counts against Meddings: one for conspiracy to violate the plaintiffs' civil rights under 42 U.S.C. § 1983; and two alleging state-law claims, for defamation and intentional infliction of emotional distress.[2] After discovery, both parties moved for summary judgment. The plaintiffs sought summary judgment on their defamation claim alone, while Meddings sought summary judgment on the merits of all three claims against him. Meddings also argued that he was entitled to federal qualified immunity and to statutory immunity under § 29-12A-5(b) of the West Virginia Code, which protects employees of the state's political subdivisions. *See* W. Va. Code § 29-12A-5(b) (2022).

The district court denied summary judgment to both parties on the merits, finding that genuine disputes of material fact precluded an award of judgment as a matter of law. *Reeves v. Wayne Cnty. Bd. of Educ.*, No. 3:20-0423, 2021 WL 5417396, at *3-5 (S.D.W. Va. Nov. 19, 2021). Although that part of the court's ruling is not directly before us now, we describe it briefly here because it bears on the immunity issues in the case.

---

[2] The plaintiffs' complaint also included a state-law invasion of privacy claim based on a "false light" theory. The district court granted Meddings's motion to dismiss that claim against him, and it is not before us on appeal.

6

The court began with the § 1983 conspiracy claim, which, as the court recognized, would require the plaintiffs to establish that Meddings acted in concert with Deputy Sowards, and that some overt action was taken which led to a deprivation of the Reeveses' constitutional rights. *Id.* at \*3 (quoting *Penly v. McDowell Cnty. Bd. of Educ.*, 876 F.3d 646, 658 (4th Cir. 2017)). The court acknowledged Meddings's deposition testimony – corroborated by Sowards – purporting to establish that his actions in assisting Sowards had been well within the scope of his employment at the bus garage, and that he had been only "tangentially" involved in the criminal investigation. *Id.* But the deposition testimony offered by the plaintiffs, the court explained, "establishe[d] the exact opposite." *Id.* A reasonable jury, the court concluded, could credit that evidence and find that Meddings in fact was "personally very involved in the [] police investigation" and had conspired with Sowards to "falsely accuse the Reeves[es] and subject them to arrest." *Id.*

In particular, the court determined, the record evidence would support a finding that Meddings engaged in private communications with Deputy Sowards about the investigation; that Sowards forwarded him records recovered from a search of Mr. Reeves's cell phone; and that Meddings had contacted multiple other garage employees about the Reeveses' private investigation preparing for this lawsuit, instructing them not to cooperate with the private investigator. *Id.* And it was undisputed that Meddings was on the scene when the Reeveses' home was searched, with his level of involvement in the search subject to dispute. *Id.* In sum, the court concluded, the record evidence regarding Meddings's role in the investigation "conflicts greatly and could lead to a reasonable

7

inference in favor of either party's version of events," making summary judgment inappropriate. *Id.*

The court reached a similar determination with respect to the record evidence on the defamation and intentional infliction of emotional distress ("IIED") claims. As to both, Meddings's principal defense was that he had acted not from any animus against the Reeveses but only in good faith, believing his accusations to be true – which would entitle him to a qualified privilege as to the plaintiffs' defamation claim, *id.* at *4, and preclude a finding that he acted intentionally or outrageously for purposes of their IIED claim, *id.* at *5. But here again, the court concluded that the summary judgment record gave rise to genuine disputes of fact as to Meddings's subjective state of mind. With respect to defamation, the district court held, neither party was entitled to summary judgment, because the record was "inconclusive" as to whether Meddings believed in "good faith" that the Reeveses were guilty. The "total circumstances" of Meddings's "alleged animus and past conduct towards the [p]laintiffs," that is, would allow – but not compel – a reasonable jury to reject Meddings's good-faith defense. *Id.* at *4. And likewise, with respect to IIED, a rational jury could disagree with Meddings that he acted "in good faith and with no personal vendetta against the Reeveses." *Id.* at *5.

Directly relevant here, the district court also denied Meddings summary judgment on federal qualified immunity and state statutory immunity grounds. *Id.* at *2. The court began by laying out the standard for qualified immunity:

> The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In

8

> determining whether qualified immunity applies, the court must conduct a two-step analysis. First, the court must determine whether the record supports a violation of a constitutional right. Second, the court must determine whether the right was clearly established at the time of defendant's alleged misconduct.

*Id.* (internal quotation marks and citation omitted). The district court then articulated the West Virginia statutory immunity standard, which "provides statutory immunity from liability for an employee of a political subdivision unless his acts were manifestly outside the scope of employment or were done with malicious purpose, bad faith, or in a wanton or reckless manner." *Id.* (citing W. Va. Code Ann. § 29-12A-5(b)).

The court appeared to turn first to the question of state statutory immunity, noting that Meddings qualified as an employee of a political subdivision, the Wayne County Board of Education, as defined by West Virginia law. *Id.* at *3. Meddings argued, the court explained, that he had acted within the scope of his employment, merely assisting the police in their investigation, and that the plaintiffs had failed to produce any evidence of a "malicious purpose." *Id.*; *see* W. Va. Code Ann. § 29-12A-5(b)(1) ("scope of employment" requirement for statutory immunity); *id.* § 29-12A-5(b)(2) ("malicious purpose" exception to statutory immunity). But the court disagreed, at least as to "malicious purpose." The evidentiary record included testimony from multiple witnesses "about [Meddings's] animus towards the Reeveses," the court explained, and from that evidence, a reasonable jury could infer that Meddings "acted maliciously," foreclosing statutory immunity. *Id.*

The court did not return to the familiar two-step standard governing federal qualified immunity. Instead, it seems to have disposed of that issue with the following reasoning:

9

The same jury that could find Meddings "acted maliciously and intentionally" towards the plaintiffs could further infer that he "intended [his] accusations to lead to false criminal charges, depriving the Reeveses of their constitutional rights." And that, the court concluded, would be enough to "prevent[] him from relying on qualified immunity to insulate him from their claims." *Id.*

Meddings noted a timely appeal of the district court's denial of summary judgment on immunity grounds.

## II.

We review de novo a district court's denial of immunity at summary judgment. *Cox v. Quinn*, 828 F.3d 227, 235 (4th Cir. 2016). The immunity standard we apply is the same as that used by the district court: We view the facts in the light most favorable to the nonmoving party – here, the Reeveses – and recognize that summary judgment may be granted only if "no material facts are disputed" and Meddings is "entitled to judgment as a matter of law" on his immunity claims. *Hicks*, 965 F.3d at 308 (internal quotation marks omitted); *see Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc); Fed. R. Civ. P. 56(a).

The scope of our review is further limited by the procedural posture of this appeal. Ordinarily, denials of summary judgment are interlocutory orders not subject to appellate review. *See Williams v. Strickland*, 917 F.3d 763, 767 (4th Cir. 2019). But denials of federal qualified immunity, and denials of state-law immunities that likewise protect against standing suit, may be appealed immediately under the collateral order doctrine. *See*

10

*Hicks*, 965 F.3d at 308; *R.A. v. Johnson*, 36 F.4th 537, 541 (4th Cir. 2022) ("An order denying immunity is immediately appealable when, under state law, the immunity is an immunity from suit, not merely from liability.") (internal quotation marks omitted). Our review in such cases, however, is limited to legal questions; we have jurisdiction over the denial of immunity only "to the extent it turns on an issue of law." *Gould v. Davis*, 165 F.3d 265, 268 (4th Cir. 1998); *see also*, *e.g.*, *Cox*, 828 F.3d at 235. "Whether we agree or disagree with the district court's assessment of the record evidence," in other words, "is of no moment in the context of [an] interlocutory appeal," *Culosi v. Bullock*, 596 F.3d 195, 201 (4th Cir. 2010), and we may not evaluate the evidentiary record ourselves, *Hensley ex rel. North Carolina v. Price*, 876 F.3d 573, 579 (4th Cir. 2017). Instead, we must take the facts as the district court "gives them to us," and determine whether, viewed in the light most favorable to the plaintiffs, they allow for a grant of immunity to the defendant as a matter of law. *Hicks*, 965 F.3d at 309.

That restriction on our jurisdiction is sufficient to dispose of Meddings's appeal as to the denial of state statutory immunity. There is no dispute that under West Virginia law, as the district court explained, Meddings is not protected by public official immunity if he acted "with malicious purpose" or in bad faith. *See* W. Va. Code Ann. § 29-15A-5(b)(2); *Reeves*, 2021 WL 5417396, at *2. The district court went on to hold that the evidentiary record before it would allow a reasonable jury to find that Meddings had indeed "acted maliciously" towards James and Katrina Reeves – both in its immunity analysis, *see id.* at *3, and in denying summary judgment on the merits, *see id.* at *4 (finding the evidentiary record "inconclusive" as to Meddings's good-faith belief in the truth of the information he

11

provided and noting that evidence of Meddings's "alleged animus and past conduct towards the [p]laintiffs could lead to a finding that precludes good faith"); *id.* at *5 (finding dispute of fact as to whether Meddings "acted in good faith and with no personal vendetta against the Reeveses").

On appeal, Meddings raises no legal argument with respect to that conclusion. He does not contend, for instance, that the district court applied the wrong legal standard, and he does not dispute that if, as the district court determined, there is evidence from which a jury could find "malicious purpose," he is not entitled to statutory immunity as a matter of law. Instead, Meddings takes issue with the district court's assessment of the evidentiary record, arguing on appeal – as he did before the district court – that there are *not* genuine issues of fact regarding malice. *See*, *e.g.*, Br. of Appellant at 32 (arguing that there "is no evidence to suggest that the information provided by Meddings in connection with the criminal investigation was in any way malicious"). That is precisely the type of fact- and record-based argument that we are foreclosed from entertaining in this posture. *See Gould*, 165 F.3d at 268 (finding absence of jurisdiction to "review the district court's order insofar as that order determines whether or not the pretrial record sets forth a genuine issue of fact for trial" (internal quotation marks omitted)). Because Meddings's claim that he is entitled to state statutory immunity rests on his disagreement with the district court's "assessment

12

of the record evidence," *Culosi*, 596 F.3d at 201, it is not properly before us, and we must dismiss that portion of his appeal.[3]

As to federal qualified immunity, by contrast, Meddings does raise a legal argument over which we have jurisdiction: that the district court failed to apply the correct legal standard in considering whether he is entitled to qualified immunity from the Reeveses' claim that he conspired to deprive them of their constitutional rights in violation of § 1983. On this point, we agree with Meddings, and therefore vacate the district court's judgment in part.

In § 1983 cases, qualified immunity protects "government officials performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). If a public official engages in conduct "that is entirely beyond [his] discretionary authority," then he is not protected by this

---

[3] As noted above, we may hear an interlocutory appeal of a denial of state-law immunity only when that immunity – like federal qualified immunity – is an immunity from *suit*, and not merely from liability. *See R.A.*, 36 F.4th at 541. Because we dismiss this part of Meddings's appeal on the threshold ground described above, we need not address whether we would have jurisdiction over an interlocutory appeal of the denial of public official immunity under § 29-12A-5(b) based on legal rather than factual arguments. *See Manns v. Smith*, 203 F.3d 821 (4th Cir. 2000) (unpublished) (dismissing interlocutory appeal from denial of immunity under § 29-12A-5 because it rested on factual dispute and assuming without deciding that court would have jurisdiction to hear appeal turning on "abstract issues of law"); *see also State ex rel. City of Bridgeport v. Marks*, 759 S.E.2d 192, 199 (W. Va. 2014) (quoting *Hutchison v. City of Huntington*, 479 S.E.2d 649, 658 (1996), for the proposition that qualified immunity under § 29-12A-5(b) is "immunity from suit" because "'[i]mmunities under West Virginia law are more than a defense to a suit in that they grant . . . public officials the right not to be subject to the burden of trial at all.'").

immunity. *See In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997). But in the more common case in which a § 1983 defendant has acted within the scope of his authority, we engage in a two-prong qualified immunity inquiry, asking whether the plaintiff has shown (a) that a constitutional violation occurred, and (b) that the "right violated was clearly established" at the time of the defendant's conduct. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (granting courts discretion as to order in which two steps are addressed). The "clearly established" standard is satisfied only where "existing precedent" puts the constitutional question "beyond debate," ensuring that officials can "reasonably anticipate when their conduct may give rise to liability." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (cleaned up).

That is not the standard applied by the district court here. The district court included no discussion of this two-prong standard in its analysis of Meddings' immunity from suit. *Reeves*, 2021 WL 5417396, at *2. In denying summary judgment to Meddings on the merits of the § 1983 conspiracy claim against him, the court determined that the evidence would allow a finding that Meddings conspired with Sowards to "falsely accuse the Reeves[es] and subject them to arrest," *Reeves*, 2021 WL 5417396, at *3 – and as discussed above, in this interlocutory posture, we take that determination as a given. But the district court did not go on to identify the constitutional right of which the Reeveses were deprived as a result of this conspiracy. *See Penly*, 876 F.3d at 658 (identifying elements of § 1983 conspiracy claim). Nor, as Meddings emphasizes on appeal, did the district court ever consider whether this right – presumably, a right to be free of a knowingly false arrest,

14

perhaps under a malicious prosecution theory, *see* J.A. 20 (amended complaint) – was "clearly established" at the time of the conspiracy.

Instead, the district court appears to have conflated the state and federal immunity standards, holding that Meddings was not entitled to summary judgment based on federal qualified immunity because a jury could find that he "acted maliciously" towards the Reeveses, "intend[ing] [his] accusations to lead to false criminal charges." *Reeves*, 2021 WL 5417396, at *3. That a jury could reasonably find subjective malice is indeed dispositive as to state statutory immunity, as discussed above. But it has no bearing on federal qualified immunity, which considers only the "*objective* reasonableness of an official's conduct, as measured by reference to clearly established law." *Harlow*, 457 U.S. at 818 (emphasis added). Contrary to what seems to have been the district court's understanding, *see Reeves*, 2021 WL 5417396, at *2 ("Both qualified immunity and statutory immunity can be overcome by a showing of malicious conduct."), "evidence that the defendant's conduct was malicious or otherwise improperly motivated" is "simply irrelevant" to the federal qualified immunity defense. *See Crawford-El v. Britton*, 523 U.S. 574, 588 (1998).

Because of its truncated analysis, the district court also failed to consider whether this might be the "rare[]" case in which a defendant's conduct is so "totally beyond the scope of his authority" that he is not protected by qualified immunity. *See In re Allen*, 106 F.3d at 594; *id.* at 595 n.4 (asking whether a defendant's action was "clearly established to be beyond the scope of his authority" under state statutes or regulations). In analyzing the § 1983 conspiracy claim, the district court concluded that there was record evidence that

15

Meddings, contrary to his protestations, had been "personally very involved in the [] police investigation and causing the criminal complaint to issue" – by, for instance, obtaining records from a search of James Reeves's cell phone from Sowards, participating in some manner in the search of the Reeveses' home, and instructing bus garage employees not to cooperate with the investigation. *Reeves*, 2021 WL 5417396, at *3. As the court recognized, whether that level of involvement in a criminal investigation would take Meddings – a parts supervisor at a Board of Education bus garage – "manifestly outside the scope of employment" was relevant to his state statutory immunity claim. *See id.* at *2; W. Va. Code Ann. § 29-12A-5(b)(1) (precluding immunity if an employee's acts are "manifestly outside the scope of employment or official responsibilities"). But because the court relied on record evidence of "malicious purpose" to resolve (properly) the state statutory immunity claim and (improperly) the federal qualified immunity claim, it did not further consider the "scope of employment" issue.

We thus vacate the district court's judgment to the extent it denied Meddings's motion for summary judgment as to the Reeveses' § 1983 conspiracy claim based on federal qualified immunity. Because "this Court is a court of review, not of first view," *Fusaro v. Cogan*, 930 F.3d 241, 264 (4th Cir. 2019) (internal quotation marks omitted), we follow our usual practice and remand to the district court to address in the first instance whether, under the correct standard, Meddings is entitled to federal qualified immunity as a matter of law.

16

### III.

For the foregoing reasons, the appeal is dismissed in part, the judgment of the district court is vacated in part, and the case is remanded for proceedings consistent with this opinion.

*DISMISSED IN PART,*
*VACATED IN PART,*
*AND REMANDED*