**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-1823

KATRINA REEVES,

       Plaintiff – Appellee,

  and

JAMES LEE REEVES,

       Plaintiff,

  v.

HOWARD MEDDINGS, Individually,

       Defendant – Appellant,

  and

DEPUTY HARRY SOWARDS, Individually,

       Defendant.

Appeal from the United States District Court for the Southern District of West Virginia, at Huntington.  Robert C. Chambers, District Judge.  (3:20-cv-00423)

Submitted:  February 24, 2025               Decided:  May 14, 2025

Before KING, AGEE, and HARRIS, Circuit Judges.

Dismissed in part and affirmed in part by unpublished per curiam opinion.

———————————

**ON BRIEF:**   Perry W. Oxley, David E. Rich, Samantha J. Fields, OXLEY RICH SAMMONS, PLLC, Huntington, West Virginia, for Appellant.  Hoyt Glazer, Abraham J. Saad, Eric B. Anderson, GLAZER SAAD ANDERSON L.C., Huntington, West Virginia, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Howard Meddings filed this interlocutory appeal to challenge the district court's denial of summary judgment based on its determination that he was not entitled to federal qualified immunity. The fact-based arguments he raises on appeal fall outside our limited jurisdiction at this state of the proceedings, and his remaining argument lacks merit. Accordingly, we dismiss in part and affirm in part.

I.

Very little is undisputed about the underlying narrative leading up to this litigation. Indeed, the district court observed that the parties disputed "the characterization of almost all of the facts on the record." *Reeves v. Wayne Cnty. Bd. of Educ.*, No. 3:20-cv-0423, 2021 WL 5417396, at *3 (S.D.W. Va. Nov. 19, 2021) [*Reeves I*]; *see also Reeves v. Meddings*, No. 3:20-cv-0423, 2023 WL 4378137, *7 (S.D.W. Va. July 6, 2023) [*Reeves III*] (characterizing the "hotly contested disputes of fact"). Recounted at a broad level, however, in the fall of 2019, after a reported theft of items from the Wayne County, West Virginia, Board of Education's bus garage, law enforcement investigated. Two employees at the garage—Meddings and James Lee Reeves—had a contentious history, which had been made more tense in the months before the theft after Mr. Reeves was promoted to a position both men had sought. Meddings was friends with Deputy Harry Sowards, the lead investigator into the theft, and they communicated throughout the investigation, though the nature and extent of those interactions is contested. Regardless, Mr. Reeves was soon implicated in the investigation, leading to a search of the property where he resided with

3

his wife, Katrina Reeves. Meddings was present during that search, communicating with law enforcement.

In February 2020, Mr. Reeves was charged in state court with embezzlement, and both he and Mrs. Reeves were charged with conspiracy to embezzle. Their arrests and the aftermath of the charges were the focus of news reports. They were both suspended from their employment with the County. Mrs. Reeves was a bus driver, and declined the County's later offer to return to her position.

After the preliminary hearing several months later, the state magistrate dismissed the conspiracy charges based on the determination that probable cause did not support them. And although it did not happen until after this federal case was underway, the state magistrate later dismissed the embezzlement charge against Mr. Reeves, writing that while dismissal was required given his intervening death, it had been prepared to dismiss the charges based on its finding that Deputy Sowards had made multiple misstatements that had led to the charges in the first instance. The court deemed it unnecessary to determine whether those misstatements had been made intentionally, noting instead that they were so numerous as to be reckless at best, and that their number and nature had misled the grand jury to indict Mr. Reeves.

Before all the state charges had been resolved and before Mr. Reeves' death, however, Mr. and Mrs. Reeves filed this federal complaint in the U.S. District Court for the Southern District of West Virginia. It originally alleged multiple federal and state claims against multiple defendants, all arising from the investigation, criminal charges, and employment decisions surrounding the above-recounted events. The other claims have

4

been resolved and all that matters for purposes of this appeal are the claims against Meddings, which were: (1) civil conspiracy to violate civil rights, brought under 42 U.S.C. § 1983; (2) defamation; and (3) intentional infliction of emotional distress.

After discovery, both parties moved for summary judgment, and the district court denied both motions after concluding genuine issue of material fact precluded it. Relatedly, the district court denied Meddings' assertion of federal qualified immunity and state statutory immunity after (incorrectly) concluding that *both* could be overcome with evidence of malicious conduct. *See Reeves I*, 2021 WL 5417396 at *2, *5.

Meddings sought interlocutory review of the denial of immunity. In the prior appeal, we dismissed the part of his challenge that took issue with the district court's finding that a factual dispute precluded state statutory immunity. *Reeves v. Meddings*, No. 21-2391, 2022 WL 17091862, *1 (4th Cir. Nov. 21, 2022) [*Reeves II*]. "But we agree[d] with Meddings that the district court did not consider his federal qualified immunity claim under the proper legal standard," and so vacated and remanded for the district court to undertake that analysis. *Id.* We also took note that Mr. Reeves had died while the appeal was pending, and left to the district court to determine what, if any, claims could survive so as to be brought by his estate. *Id.* at *2 n.1.

On remand, the district court concluded that no claims brought by Mr. Reeves survived his death, so the case was narrowed to Mrs. Reeves' claim that Meddings conspired to violate her civil rights under § 1983. Turning to the question of federal immunity, the court left intact its prior determination of the existence of material fact disputes, applied the proper federal qualified immunity analysis, and determined that

5

Meddings was not entitled to that immunity at the summary judgment stage. *Reeves III*, 2023 WL 4378137 at *1–7.

Meddings noted another interlocutory appeal, and—as explored below—we have limited jurisdiction under 28 U.S.C. § 1291 and the collateral order doctrine.

## II.

Although couched in a variety of arguments, Meddings's appeal rests almost entirely on a version of events that ignores contradictory evidence and the district court's determination that genuine issues of material fact call his own version of events into sharp dispute. And therein lies the rub, for we lack jurisdiction to consider such fact-based underpinnings to arguments at this stage of proceedings.

As we have said many times before, in an interlocutory appeal from the denial of qualified immunity, "we have jurisdiction to consider purely legal questions, but not over the district court's determination that the summary judgment record . . . raised a genuine issue of material fact because that is not a final decision for purposes of 28 U.S.C. § 1291." *Pegg v. Herrnberger*, 845 F.3d 112, 117 (4th Cir. 2017) (internal quotation marks and citation omitted). Relatedly, "[w]hether we agree or disagree with the district court's assessment of the record evidence on [an] issue is of no moment in the context of [an] interlocutory appeal." *Culosi v. Bullock*, 596 F.3d 195, 201 (4th Cir. 2010). "Instead, we must take the facts as the district court 'gives them to us,' and determine whether, viewed in the light most favorable to [Mrs. Reeves], they allow for a grant of immunity to

6

[Meddings] as a matter of law." *Reeves II*, 2022 WL 17091862, \*4 (quoting *Hicks v. Ferreyra*, 965 F.3d 302, 309 (4th Cir. 2020)).

Meddings's brief almost exclusively argues matters outside our limited jurisdiction on interlocutory appeal. For example, he claims a lack of evidence to support the district court's finding of a factual dispute over how involved he was in the investigation and search of the Reeves property; he recounts at length deposition testimony supporting his characterization of events; and he disputes the reasonableness of the inferences and conclusions the district court determined a jury could make based on the record. These challenges to the record cannot be considered at this juncture. *Hensley ex rel N.C. v. Price*, 876 F.3d 573, 579 (4th Cir. 2017) ("[On interlocutory appeal], we may not credit defendant's evidence, weigh the evidence, or resolve factual disputes in the defendant's favor."). The rest of Meddings' arguments flow from this initial reframing of his conduct as purely innocuous good faith cooperation with a legitimate law enforcement investigation. His resistance to "the facts as the district court '[gave] us'" permeates the brief, precluding review of matters, such as the clearly established prong, that would traditionally be viewed as raising pure questions of law. *Reeves II*, 2022 WL 17091862, \*4 (quoting *Hicks*, 965 F.3d at 309); *see also Thurston v. Frye*, 99 F.4th 665, 672 (4th Cir. 2024) ("Whether particular conduct violates a constitutional right and whether that right is clearly established are legal questions.").

In particular, Meddings argues that the district court erred in concluding that his conduct violated Mrs. Reeves's clearly established rights. Although he purports to challenge the district court's articulation of what rights are clearly established and whether

it viewed the question at the right level of generality, those arguments hinge on first rejecting the district court's assessment of the underlying factual record. As but one example, he argues that no case law clearly establishes liability on the part of a "government official cooperating with law enforcement" during a criminal investigation. Opening Br. 40. Perhaps, but that argument necessarily contradicts the district court's factual assessment that the record could also allow a factfinder to conclude that Meddings was not "cooperating with law enforcement," but rather maliciously "directing the criminal investigation, causing process to be issued against Ms. Reeves without probable cause, searching the Reeves home and Mr. Reeves's phone records, instructing coworkers not to cooperate with the investigation to Ms. Reeves's detriment, providing false or misleading statements to Deputy Sowards, etc." *Reeves III*, 2023 WL 4378137 at *7. A purely legal challenge to this prong's inquiry would consider whether Meddings's conduct violated Mrs. Reeves's clearly established rights through the lens of the district court's assessment of what the record may allow a factfinder to determine. *Cf., e.g.*, *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005) (explaining that whether someone "was entitled to qualified immunity under" settled facts is a legal question). It would not—as Meddings's brief does—first reframe what he did before engaging with whether that conduct violated Mrs. Reeves's clearly established rights. And, notably, Meddings does not challenge the district court's determination that, if a factfinder found against him in terms of what he did, then his conduct could have violated Mrs. Reeves' clearly established rights. So, Meddings' arguments on this prong of the inquiry are not properly before us.

8

In sum, Meddings' arguments predominantly conflict with the district court's assessment of the record evidence and its conclusion that a genuine issue of material fact existed on core matters relating to Mrs. Reeves's claim. So, as explained above, we lack jurisdiction to consider that part of Meddings's appeal and therefore dismiss it in part.

Having scoured Meddings's brief for any purely legal issue over which we would have jurisdiction, we located one such possible question, and so briefly address it. *See Winfield v. Bass*, 106 F.3d 525, 528–29 (4th Cir. 1997). Meddings challenges the district court's sua sponte determination that a factfinder could find that he was not acting within the scope of his authority during the events in question such that he may not be entitled to assert qualified immunity on that basis. In his view, because that was not a ground that Mrs. Reeves had pursued as a basis for denying immunity, the court erred by undertaking that review. Although the district court's ultimate determination that a question of fact existed on this issue is not properly before us at this time, we can consider the legal question of whether it erred in sua sponte considering it. We readily conclude that it did not so err.

As we observed in the first interlocutory appeal, when a "public official engages in conduct 'that is entirely beyond [his] discretionary authority,' then he is not protected by this immunity" even apart from considering the two-prong qualified immunity inquiry that otherwise applies. *Reeves II*, 2022 WL 17091862, at *5 (quoting *In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997)) (alteration in original). And we observed that, "[b]ecause of its truncated analysis, the district court . . . failed to consider whether this might be the 'rare[]' case in which a defendant's conduct is so 'totally beyond the scope of his authority' that he is not protected by qualified immunity." *Id.* at *6 (quoting *In re Allen*, 106 F.3d at 594)

9

(alteration in original). We then remanded the case "to the district court to address in the first instance whether, under the correct standard, Meddings is entitled to federal qualified immunity as a matter of law." *Id.*

Once Meddings invoked qualified immunity as a defense, the district court was free to consider all aspects of that defense in deciding whether to grant or deny judgment. *Cf.* Fed. R. Civ. P. 56(f) (permitting the court to grant summary judgment "on grounds not raised by a party"). And, here, our prior decision teed up the issue of the scope of authority as an issue the district court could consider as part of its determination of qualified immunity. There's no support for Meddings' suggestion—and it would make little sense to say—that the court then erred as a matter of law in doing something that it had authority to do under the governing rules and that we had specifically suggested that it consider on remand. Accordingly, we affirm that part of the district court's decision.

## III.

For the reasons set out above, the appeal is dismissed in part and the decision of the district court to deny summary judgment on the basis of qualified immunity is affirmed in part.

*DISMISSED IN PART*
*AND AFFIRMED IN PART*